THE STATE EX REL. MAHAJAN *v.* STATE MEDICAL BOARD OF OHIO.

[Cite as *State ex rel. Mahajan v. State Med. Bd. of Ohio*,

127 Ohio St.3d 497, 2010-Ohio-5995.]

*Mandamus — Public records — R.C. 149.43 — Confidential law-enforcement investigatory records — R.C. 4731.22(F)(5) — Confidentiality of information received by Medical Board pursuant to an investigation — Writ granted in part and denied in part — Request for statutory damages and attorney fees denied.*

(No. 2009-2293 — Submitted September 14, 2010 — Decided December 15, 2010.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** This is an action for a writ of mandamus to compel respondent, the State Medical Board of Ohio, to provide access to unredacted copies of certain records related to one of its enforcement attorneys, pursuant to the Ohio Public Records Act, R.C. 149.43, and to award statutory damages and attorney fees. For those few parts of the requested records that the board improperly redacted, we grant the writ. For the vast majority of the records, in which the board properly redacted those portions that are exempt from disclosure, we deny the writ. We also deny relator's request for statutory damages and attorney fees.

## I. Facts

**{¶ 2}** Relator, Mahendra Kumar Mahajan, M.D., is a physician licensed by the State Medical Board of Ohio to practice medicine in Ohio. Dr. Mahajan is a psychiatrist who has practiced in Dayton since 1982. On May 4, 2007, in connection with the board's investigation of Dr. Mahajan, David P. Katko, an

enforcement attorney employed by the board, deposed him. On that same day, Nicholas E. Subashi, Dr. Mahajan's counsel, mailed a letter to the board's director complaining about Katko's deposition conduct, which Subashi described as "rude, unprofessional, threatening, and intimidating." Rebecca Marshall, the board's chief enforcement attorney, responded that she and the director had met with Katko "to counsel him about the unprofessional impression that arose" from his conduct at the deposition.

{¶ 3} The board notified Dr. Mahajan of its intent to take disciplinary action against him for violating R.C. 4731.22 by failing to maintain minimal standards of care. It held a hearing on the disciplinary charges against Dr. Mahajan in January 2009. After the hearing, Dr. Mahajan requested that the board provide him with copies of certain records, including the board's personnel file for Katko. The board produced over 8,000 pages and several CDs of responsive records, including Katko's personnel file. The personnel file did not contain letters to or from Dr. Mahajan's counsel.

{¶ 4} Because Dr. Mahajan's attorney was surprised that his correspondence with the board was not included in the copy of Katko's personnel file provided by the board, on April 9, 2009, he made a new request for 11 categories of records relating to Katko. The board contacted the doctor's attorney to advise him that his new records request was overbroad and to give him an opportunity to narrow it. Dr. Mahajan's counsel then amended his request to ask for only those records received or created by board members or management-level personnel related to Katko's May 4, 2007 deposition of Dr. Mahajan and any similar incidents involving Katko.

{¶ 5} On May 1, 2009, the board responded to Dr. Mahajan's revised records request by providing him with additional records. The board redacted portions of the requested records and provided the following detailed reasons for not disclosing the redacted material:

2

**{¶ 6}** 1. May 17, 2007 e-mail from Katko to the board's chief enforcement attorney. The board redacted the name of the physician and a quotation from a deposition transcript based on R.C. 4731.22(F)(5) (protecting information received by the board pursuant to an investigation).

**{¶ 7}** 2. Notes of May 18, 2007 telephone conversation with the court reporter who transcribed Katko's May 4, 2007 deposition of Dr. Mahajan. The board redacted a portion of a question asking for the court reporter's opinion concerning Katko's behavior during the deposition. The redaction was based on Section 12112(d)(3)(B) and (d)(4), Title 42, U.S.Code (treating as confidential medical-records information obtained regarding medical condition or history of applicant or employee).

**{¶ 8}** 3. Notes of May 22, 2007 telephone conversation with Dr. Mahajan's attorney, Subashi. The board redacted the name of the physician, the discussion of the investigation, and a question asking for the attorney's opinion concerning Katko's behavior. This redaction was based on R.C. 4731.22(F)(5) and Section 12112(d)(3), Title 42, U.S.Code.

**{¶ 9}** 4. May 31, 2007 memorandum by the chief enforcement attorney to Katko's employee file concerning his counseling by the board regarding his deposition conduct. The board redacted portions of the memorandum that it claimed to be excepted from disclosure under R.C. 4731.22(F)(5) and as confidential law-enforcement investigatory records, the release of which would create a high probability of disclosure of specific confidential investigatory techniques or procedures, under R.C. 149.43(A)(2).

**{¶ 10}** 5. An e-mail thread beginning with an e-mail from Katko to the board's chief enforcement officer on June 18, 2007, and continuing through a June 19, 2007 e-mail from the chief enforcement officer to the board's assistant director. The board redacted the names of the physician based on R.C. 4731.22(F)(5). It redacted other portions of the e-mails as investigative records

under that same statute and as confidential law-enforcement investigatory records, the release of which would create a high probability of disclosure of specific confidential investigatory techniques or procedures, under R.C. 149.43(A)(2).

{¶ 11} 6. October 2, 2007 handwritten note regarding a discussion with Katko instructing him not to destroy prior versions of expert reports. The board redacted the name of the physician in a separate case before the board, pursuant to R.C. 4731.22(F)(5).

{¶ 12} 7. An e-mail thread from October 5, 2007, regarding what Katko characterized as a reprimand by an assistant attorney general about his conduct. The board redacted the name of the subject of the investigation under R.C. 4731.22(F)(5), the discussion of a particular investigatory matter between the board's chief enforcement attorney and the board's assistant director under the confidential-law-enforcement-investigatory-record exception in R.C. 149.43(A)(2), and the message from an assistant attorney general to Katko based on the attorney-client privilege.

{¶ 13} Dr. Mahajan objected to some of the board's redactions, including some, but not all, of those previously specified. The board responded that after consultation with the attorney general's office, it had "determined that the redactions cited in [the] letter dated May 1, 2009 are appropriate and that no additional documents will be provided." In another letter dated September 29 addressed to the attorney general's office, Dr. Mahajan's attorney urged the board to reconsider the redactions he had objected to in his earlier letter. The board, through the attorney general's office, again refused.

{¶ 14} On December 21, 2009, Dr. Mahajan filed this action for a writ of mandamus to compel the board to provide him with access to unredacted copies of the seven responsive records previously discussed. The board filed an answer, and following unsuccessful mediation, we granted an alternative writ.

**{¶ 15}** On April 5, 2010, the board's hearing examiner issued a report and recommendation in the disciplinary case concerning Dr. Mahajan. In his report, the hearing examiner recommended that Dr. Mahajan's certificate to practice medicine be indefinitely suspended. After hearing the doctor's objections to the report and recommendation, the board rejected the hearing examiner's recommendation and instead imposed a three-year probationary term.

**{¶ 16}** The parties have filed evidence and briefs in this public-records mandamus case. This cause is before us for our consideration of the merits.

## II. Legal Analysis

### A. *Brady v. Maryland and Constitutional Due Process*

**{¶ 17}** In his merit brief, Mahajan asserts that he is entitled to the unredacted portions of the requested records based on *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, and constitutional due process. In *Brady*, the United States Supreme Court held that due process requires that the prosecution provide criminal defendants with any evidence that is favorable to them whenever that evidence is material to their guilt or punishment. Id. at 87. See also *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 67.

**{¶ 18}** We need not consider the merits of Mahajan's constitutional claim because he did not raise it in his complaint. Nor did he amend his complaint to raise this claim. And the board did not expressly or impliedly consent to its litigation. See *State ex rel. Plain Dealer Publishing Co. v. Cleveland*, 106 Ohio St.3d 70, 2005-Ohio-3807, 831 N.E.2d 987, ¶ 64; *State ex rel. Miller v. Reed* (1999), 87 Ohio St.3d 159, 160, 718 N.E.2d 428 ("we need not address the merits of [appellant's] constitutional claim because [he] did not raise this issue in his complaint or amend his complaint to include this claim, and appellees did not expressly or impliedly consent to litigation of this claim").

**{¶ 19}** Moreover, assuming that the board consented to the litigation of this claim by briefing its merits, insofar as Mahajan claims entitlement to the redacted portions of the records or suggests some deprivation of his due-process rights by the medical-board proceeding against him, he has or had an adequate remedy in the ordinary course of law by administrative appeal. See *State ex rel. Natl. Emps. Network Alliance, Inc. v. Ryan*, 125 Ohio St.3d 11, 2010-Ohio-578, 925 N.E.2d 947, ¶ 1 ("An administrative appeal generally constitutes an adequate remedy in the ordinary course of law that precludes a writ of mandamus"); *State ex rel. Russo v. Deters* (1997), 80 Ohio St.3d 152, 154, 684 N.E.2d 1237 ("to the extent [appellant] claims entitlement to the videotape under Crim.R. 16 or some provision other than R.C. 149.43, he had adequate remedies in the ordinary course of law at trial and on appeal"); R.C. 119.12.

**{¶ 20}** Therefore, Mahajan is not entitled to the requested writ based on his constitutional claim, and his Public Records Act claim is dispositive of his right to the requested extraordinary relief in mandamus.

*B. Mandamus in Public-Records Cases*

**{¶ 21}** "Mandamus is the appropriate remedy to compel compliance with R.C. 149.43, Ohio's Public Records Act." *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6; R.C. 149.43(C)(1). "We construe the Public Records Act liberally in favor of broad access and resolve any doubt in favor of disclosure of public records." *State ex rel. Rocker v. Guernsey Cty. Sheriff's Office*, 126 Ohio St.3d 224, 2010-Ohio-3288, 932 N.E.2d 327, ¶ 6.

**{¶ 22}** The State Medical Board of Ohio is a public office for purposes of R.C. 149.43. *State ex rel. Wallace v. State Med. Bd. of Ohio* (2000), 89 Ohio St.3d 431, 434, 732 N.E.2d 960; R.C. 149.011(A) (" 'Public office' includes any state agency") and (B) (" 'State agency' includes every * * * board * * * established by the constitution and laws of this state for the exercise of any

function of state government"); R.C. 4731.01 ("The governor, with the advice and consent of the senate, shall appoint a state medical board consisting of twelve members, eight of whom shall be physicians and surgeons licensed to practice in Ohio"); R.C. 4731.22 (board has power to take disciplinary actions against persons certificated to practice medicine).

**{¶ 23}** The requested records generally constitute records for purposes of R.C. 149.43 insofar as they "document the organization, functions, policies, decisions, procedures, operations, or other activities of the office." R.C. 149.011(G).

**{¶ 24}** The board redacted portions of the requested records based on its belief that they are excepted from disclosure. "Exceptions to disclosure under the Public Records Act, R.C. 149.43, are strictly construed against the public-records custodian, and the custodian has the burden to establish the applicability of an exception." *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, 886 N.E.2d 206, paragraph two of the syllabus.

**{¶ 25}** With these general standards guiding our analysis, we next consider the seven individual redacted records and the board's claimed exemptions.

1. May 17, 2007 E-Mail

**{¶ 26}** In a May 17, 2007 e-mail from Katko to Rebecca Marshall, the board's chief enforcement attorney, the board redacted the name of the doctor being investigated for violations of the Medical Practices Act, R.C. Chapter 4731, as well as quotations and page numbers from an investigative deposition of the doctor taken by Katko.

**{¶ 27}** For the name of the doctor being investigated, the board bases its redactions on the uncharged-suspect exception for confidential law-enforcement investigatory records under R.C. 149.43(A)(1)(h) and (2)(a) as well as the board's confidentiality provision for its investigatory information, R.C. 4731.22(F)(5).

**{¶ 28}** "The applicability of the R.C. 149.43(A)(2) confidential-law-enforcement-investigatory-record exemption requires, first, that the records pertain to a law enforcement matter of a criminal, quasi-criminal, civil, or administrative nature, and, second, that the release of the records would create a high probability of disclosure of any of the four types of information specified in R.C. 149.43(A)(2)." *State ex rel. Ohio Patrolmen's Benevolent Assn. v. Mentor* (2000), 89 Ohio St.3d 440, 444, 732 N.E.2d 969.

**{¶ 29}** With respect to the first criterion, records compiled by the board while investigating whether a physician violated R.C. Chapter 4731 meet the requirement that the records pertain to a law-enforcement matter of an administrative nature. See *State ex rel. McGee v. Ohio State Bd. of Psychology* (1990), 49 Ohio St.3d 59, 60, 550 N.E.2d 945, overruled in part on other grounds, *State ex rel. Steckman v. Jackson* (1994), 70 Ohio St.3d 420, 639 N.E.2d 83 ("The reference in R.C. 149.43(A)(2) to four types of law enforcement matters — criminal, quasi-criminal, civil, and administrative — evidences a clear statutory intention to include investigative activities of state licensing boards"); *State ex rel. Polovischak v. Mayfield* (1990), 50 Ohio St.3d 51, 53, 552 N.E.2d 635.

**{¶ 30}** Nevertheless, as Mahajan contends, "[u]nder the first requirement, records are not confidential law-enforcement records if they relate to employment or personnel matters rather than directly to the enforcement of law." *State ex rel. Morgan v. New Lexington*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 49. Katko's May 17 explanatory e-mail to his supervising attorney pertains to Katko's own professional conduct instead of directly to the enforcement of the provisions of R.C. Chapter 4731. The e-mail is not exempt from disclosure as a confidential law-enforcement investigatory record.

**{¶ 31}** The board also did not establish the second requirement of the uncharged-suspect exception because the doctor who was identified in the e-mail

had been charged by the board with violating R.C. 4731.22 by the time that Dr. Mahajan made his public-records requests.

**{¶ 32}** Therefore, the uncharged-suspect exemption from public records does not allow the redaction of the doctor's name in the e-mail.

**{¶ 33}** In the alternative, the board asserts that the doctor's name is exempt from disclosure under R.C. 4731.22(F)(5). See R.C. 149.43(A)(1)(v) (excepting from the definition of a public record subject to disclosure under the Public Records Act "[r]ecords the release of which is prohibited by state or federal law"). Under R.C. 4731.22(F)(1), "[t]he board shall investigate evidence that appears to show that a person has violated any provision of this chapter or any rule adopted under it." R.C. 4731.22(F)(5) specifies that "[i]nformation received by the board pursuant to an investigation is confidential and not subject to discovery in any civil action."

**{¶ 34}** Mahajan claims that the names of the doctors investigated by the medical board are not confidential because R.C. 4731.22(F)(5) is limited to information concerning patients and complainants and is thus inapplicable to other persons, including the doctors being investigated. See R.C. 4731.22(F)(5) ("The board shall conduct all investigations and proceedings in a manner that protects the confidentiality of patients and persons who file complaints with the board"). Mahajan also argues that because any confidential information is contained in a record relating to Katko's job performance, R.C. 4731.22(F)(5) does not apply.

**{¶ 35}** Mahajan's claims lack merit. The plain language of R.C. 4731.22(F)(5) protects "[i]nformation received by the board pursuant to an investigation" – it is not restricted to information relating to patients and complainants. This language provides a "clear legislative directive" that "information received by the board during an investigation is confidential." *State Med. Bd. of Ohio v. Murray* (1993), 66 Ohio St.3d 527, 536, 613 N.E.2d 636.

Although the remainder of R.C. 4731.22(F)(5) emphasizes the importance of protecting the confidentiality of patients and complainants, we have expressly recognized that under the statute, "[s]everal groups have a privilege of confidentiality in the Medical Board's investigative files," including "patients, *physicians who are under investigation*, investigation witnesses, and any other persons whose confidentiality right is implicated by a Medical Board investigation." (Emphasis added.) *Wallace*, 89 Ohio St.3d at 435, 732 N.E.2d 960, citing *In re Kralik* (1995), 101 Ohio App.3d 232, 236, 655 N.E.2d 273. This conclusion is supported by the breadth of the preliminary sentence in R.C. 4731.22(F)(5). Therefore, R.C. 4731.22(F)(5) generally protects the names of physicians under investigation.

**{¶ 36}** Nor does R.C. 4731.22(F)(5) specify that information is confidential only if it is contained in certain types of board records, i.e., in investigative as opposed to personnel records. The statutory language instead broadly protects any information received during the investigation regardless of the type of board record in which it is contained.

**{¶ 37}** Nevertheless, the confidentiality provision in R.C. 4731.22(F)(5) may be waived by the holder of the privilege, which in this case is the doctor being investigated. Here, the doctor being investigated is the same doctor requesting an unredacted copy of the May 17, 2007 e-mail – Dr. Mahajan – so the R.C. 4731.22(F)(5) privilege of confidentiality is waived. Cf. *Wallace*, 89 Ohio St.3d at 435-436, 732 N.E.2d 960. Therefore, the name of the doctor being investigated should have been disclosed to Mahajan in response to his records requests.

**{¶ 38}** In general, R.C. 4731.22(F)(5) supports the redactions of the quotes from the investigative deposition of Dr. Mahajan because the statements are "[i]nformation received by the board pursuant to an investigation." But again, the redacted information does not implicate the statutory privilege of

confidentiality of any of the persons on whom it is conferred, and Mahajan has waived his privilege. Therefore, the quotes from Mahajan's counsel during the deposition, which Katko claimed supported his behavior during the deposition, are also not exempt from disclosure under R.C. 4731.22(F)(5).

{¶ 39} Finally, the redacted page numbers for the deposition quotations are not supported by any exemption from disclosure.

{¶ 40} Therefore, Mahajan is entitled to an unredacted copy of the May 17, 2007 e-mail.

2. May 18, 2007 Notes of Telephone Conversation

{¶ 41} The board redacted one inquiry concerning Katko's ability to perform his job-related functions from the May 18, 2007 notes of a telephone conversation by a board employee with the court reporter who had transcribed Dr. Mahajan's deposition. The board asserts that this redaction is justified by R.C. 2305.28 as referenced in R.C. 149.43, as well as Section 12112(d)(3)(B), Title 42, U.S.Code. See R.C. 149.43(A)(1)(v) (records are exempt from disclosure if their release is prohibited by state or federal law).

{¶ 42} Because the board's reliance on the Americans with Disabilities Act ("ADA"), Section 12101 et seq., Title 42, U.S.Code, is dispositive, we do not address the board's reliance on R.C. 2305.28 and 149.43. The ADA was enacted in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." Section 12101(b), Title 42, U.S. Code. Medical examinations and inquiries of current employees are prohibited if they seek to determine "whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." Section 12112(d)(4)(A), Title 42, U.S. Code.

{¶ 43} Under Section 12112(d)(4)(B), Title 42, U.S.Code, however, a "covered entity may conduct voluntary medical examinations, including voluntary

medical histories, which are part of an employee health program available to employees at that work site," and a "covered entity may make inquiries into the ability of an employee to perform job-related functions." The information obtained by the covered entity must be treated as a confidential medical record. Section 12112(d)(3)(B) and (4)(C), Title 42, U.S.Code; see also Section 1630.14(c), Title 29, C.F.R.; *Yoder v. Ingersoll-Rand Co.* (C.A.6, 1998), 172 F.3d 51 (table), 1998 WL 939885, * 1; *Loschen v. Trinity United Methodist Church of Lincoln* (Sept. 9, 2009), D.Neb. No. 4:08CV3143, 2009 WL 2902956, * 3.

{¶ 44} Because the board employee's questioning of the court reporter constituted an inquiry into whether Katko was able to perform his job-related functions, it was properly redacted by the board. The pertinent ADA provision does not limit the confidential nature of these inquiries to questions directed to employees or medical personnel. See Section 12112(d)(4)(B), Title 42, U.S.Code.

{¶ 45} Therefore, Mahajan is not entitled to an unredacted copy of the May 18, 2007 notes of the telephone conversation with the court reporter.

3. May 22, 2007 Notes of Telephone Conversation

{¶ 46} For the board's notes of a May 22, 2007 telephone conversation with Mahajan's counsel, for the same reasons previously discussed, the redaction of the doctor's name is not justified by either the uncharged-suspect exemption of R.C. 149.43(A)(1)(h) and (A)(2)(a) or the board's investigative-confidentiality provision, R.C. 4731.22(F)(5). Mahajan waived the privilege accorded his name in R.C. 4731.22(F)(5) by requesting these records. Similarly, he waived that same privilege of confidentiality for the redacted portion of the note indicating that Katko had previously deposed Mahajan without an attorney present.

{¶ 47} The redaction of the board employee's inquiry of Mahajan's counsel, based on his observations of Katko's behavior during his deposition of

12

the doctor, regarding Katko's ability to perform job-related duties, however, was proper under Section 12112(d)(3)(B) and (4)(B) and (C), Title 42, U.S. Code.

{¶ 48} The remaining redactions from the May 22, 2007 notes were appropriate under R.C. 4731.22(F)(5) because they referred to information obtained in conjunction with the board's investigation of Mahajan, including substantive allegations concerning alleged misconduct and the potential settlement of the case. These redacted materials invoke confidentiality concerns that go beyond those of the doctor and the board, e.g., the concerns of witnesses testifying against Dr. Mahajan, so the R.C. 4731.22(F)(5) confidentiality provision is not waived. See *Wallace*, 89 Ohio St.3d at 435-436, 732 N.E.2d 960.

{¶ 49} Therefore, in the May 22, 2007 note, Mahajan is entitled to disclosure of the doctor's name and the fact that the doctor had previously been deposed by Katko.

4. May 31, 2007 Memorandum

{¶ 50} In the May 31, 2007 memorandum by Rebecca Marshall, the board's chief enforcement attorney, to her employee file for Katko, entitled "Counseling regarding deposition conduct," the board improperly redacted Dr. Mahajan's name. The uncharged-suspect exemption does not justify this redaction, and the confidentiality that would otherwise be accorded to it by R.C. 4731.22(F)(5) was waived by Mahajan.

{¶ 51} The remaining redacted information, however, is protected by the confidential-law-enforcement-investigatory-record exemption for specific investigatory work product. R.C. 149.43(A)(1)(h) and (2)(c). Although the memorandum is contained in what appears to be the chief enforcement attorney's general personnel file for Katko, the redacted information directly pertains to the board's enforcement of R.C. Chapter 4731 in its case against Dr. Mahajan rather than to the ancillary employment issues concerning Katko. These portions of the memorandum thus differ from the May 17, 2007 e-mail from Katko to Marshall,

which did not pertain to the board's enforcement of an administrative matter. They are not records made in the routine course of public employment before the board's investigation of Dr. Mahajan commenced. Cf. *Morgan*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 51.

{¶ 52} The release of these portions of the memorandum would result in a high probability of disclosing specific investigatory work product. See *State ex rel. Steckman v. Jackson*, 70 Ohio St.3d at 434, 639 N.E.2d 83, quoting Black's Law Dictionary (6th Ed.Rev.1990) 1660 (work product includes notes, working papers, memoranda, or similar materials prepared by law-enforcement officials in anticipation of litigation). The redacted portions of the memorandum of the board's chief enforcement attorney reflected her and Katko's work product, i.e., their assessment of the evidence and legal strategy for the board's investigation of Dr. Mahajan, which ultimately led to the board's disciplinary action against him. We have previously observed that "[e]xempt work product is information assembled by law enforcement officials in connection with a pending or highly probable *criminal* proceeding." (Emphasis added and omitted.) *Ohio Patrolmen's Benevolent Assn.*, 89 Ohio St.3d at 445, 732 N.E.2d 969. See also *State ex rel. Gannett Satellite Info. Network, Inc. v. Petro* (1997), 80 Ohio St.3d 261, 266-267, 685 N.E.2d 1223. But those were not cases in which the claimed work product pertained to a law-enforcement matter of an administrative nature, i.e., the board's investigation of a doctor's violation of the provisions of R.C. Chapter 4731. A contrary construction of the definition of "confidential law enforcement investigatory record" in R.C. 149.43(A)(2) would delete law-enforcement matters of a "quasi-criminal, civil, or administrative nature" from its scope, a result that is not intended by the inclusion of this language in the exemption.

{¶ 53} Therefore, aside from the redaction of Dr. Mahajan's name, the redactions in the memorandum by the board were appropriate.

5. June 2007 E-mail

**{¶ 54}** In related e-mails in June 2007, Marshall notified Katko that Dr. Mahajan's attorney had sent a new letter to the board complaining about Katko's conduct during a deposition of a witness in the board's investigation. The board improperly redacted Mahajan's name from the e-mails because he had waived any right to confidentiality under R.C. 4731.22(F)(5) by requesting the records.

**{¶ 55}** Nevertheless, the board's other redactions to the June 2007 e-mails were appropriate. The witness's name was properly redacted under R.C. 4731.22(F)(5) as information received by the board during its investigation, and the witness did not waive the statutory confidentiality. The remaining redacted material is composed of information received during the investigation of Mahajan intertwined with the board's work product, e.g., its assessment of the evidence and its investigative strategy.

6. October 2, 2007 Note

**{¶ 56}** In an October 2, 2007 handwritten note in conjunction with a different investigative case involving another doctor, a board employee stated that Katko had been instructed not to destroy preliminary reports submitted by experts prior to a final version. The board redacted the name of the physician in the investigative case. That redaction was appropriate because the name of the physician is confidential under R.C. 4731.22(F)(5), and there is no evidence that the doctor in that investigation had waived the privilege.

7. October 5, 2007 E-Mail

**{¶ 57}** In e-mails sent on October 5, 2010, the redacted portion also consists of information received by the board in a different investigation concerning another doctor and correspondence from an assistant attorney general. The information is exempt from disclosure as confidential under R.C. 4731.22(F)(5), as investigatory work product under R.C. 149.43(A)(1)(h) and (2)(c), and as material protected by the attorney-client privilege. See *State ex rel.*

*Besser v. Ohio State Univ.* (2000), 87 Ohio St.3d 535, 542, 721 N.E.2d 1044 ("The attorney-client privilege, which covers records of communications between attorneys and their government clients pertaining to the attorneys' legal advice, is a state law prohibiting release of these records"); *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221 (investigation conducted by attorney that was incident to or related to legal advice to government client was covered by attorney-client privilege).

### C. Mandamus

**{¶ 58}** Based on the foregoing, Mahajan has established that he is entitled to a writ of mandamus to compel the disclosure of an unredacted copy of the May 17, 2007 e-mail, the portions of the May 22, 2007 notes that refer to Mahajan's name and the fact that he had previously been deposed by Katko, and the parts of the May 31, 2007 memorandum and June 2007 e-mails that note Mahajan's name. In all other respects, however, the board's redactions were appropriate based on applicable exemptions.

### D. Statutory Damages and Attorney Fees

**{¶ 59}** Mahajan is not entitled to an award of statutory damages because he did not transmit any of his written records requests "by hand delivery or certified mail," as required by R.C. 149.43(C)(1). *Toledo Blade*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 35; *State ex rel. Miller v. Brady*, 123 Ohio St.3d 255, 2009-Ohio-4942, 915 N.E.2d 1183, ¶ 17. Mahajan's claim that this requirement is satisfied by the court's service of his mandamus complaint on the board by certified mail contravenes the plain language of R.C. 149.43(C)(1) and would authorize simultaneously filing a records request and a complaint for a writ of mandamus, which is impermissible. See *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 14 (prior records request is a prerequisite for a public-records mandamus action).

{¶ 60} Mahajan is also not entitled to an award of attorney fees because, on the whole, the board acted appropriately in responding to his public-records request. See *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 43 (relator is not entitled to an award of attorney fees in public-records mandamus case because its claims, "[f]or the most part," lacked merit); *State ex rel. Nix v. Cleveland* (1998), 83 Ohio St.3d 379, 385, 700 N.E.2d 12 (relators in public-records mandamus case were not entitled to an award of attorney fees "because their records requests were largely meritless"). And any minimal benefit conferred by the writ granted here is beneficial mainly to Mahajan rather than to the public in general. See *Morgan*, 112 Ohio St.3d 33, 2006-Ohio-6365, 857 N.E.2d 1208, ¶ 58 (attorney fees denied to relator in public-records mandamus case when relator failed to establish a sufficient public benefit); *State ex rel. Cranford v. Cleveland*, 103 Ohio St.3d 196, 2004-Ohio-4884, 814 N.E.2d 1218, ¶ 26 (same). The limited information that was improperly redacted by the board does not shed any material light on the purported misconduct of the board enforcement attorney who deposed Dr. Mahajan.

{¶ 61} Therefore, we deny Mahajan's request for statutory damages and attorney fees.

### E. Additional Motions

{¶ 62} After the completion of briefing, in response to a separate public-records request by Dr. Mahajan's counsel, the state medical board provided a redacted copy of a letter from a licensure applicant to the board's executive director complaining in part about Katko's conduct during an investigative deposition of the applicant. The board noted in its response that it appeared that this letter "would have been responsive to [counsel's] April 9, 2009 request. However, the letter was not found in the search for public records responsive to

[the] request. If it had been found at that time, it would have been produced with redactions."

**{¶ 63}** Dr. Mahajan seeks leave to file the board's response as supplemental evidence. We grant the motion because the evidence pertains to the public-records request that is the basis for this mandamus case. " '[I]n mandamus actions, a court is not limited to considering the facts and conditions at the time a proceeding is instituted but should consider the facts and circumstances at the time it determines whether to issue the peremptory writ.' " *State ex rel. Brown v. Lemmerman*, 124 Ohio St.3d 296, 2010-Ohio-137, 921 N.E.2d 1049, ¶ 12, quoting *State ex rel. Portage Lakes Edn. Assn., OEA/NEA v. State Emp. Relations Bd.*, 95 Ohio St.3d 533, 2002-Ohio-2839, 769 N.E.2d 853, ¶ 54.

**{¶ 64}** Nevertheless, in considering this supplemental evidence, Dr. Mahajan does not challenge the redacted portions of the letter. Therefore, by providing the letter to him, any additional mandamus claim against the board was rendered moot. See *State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 43 (public-records claim rendered moot when records were provided). And although providing this requested record would not render requests for attorney fees and statutory damages moot, see, e.g., *State ex rel. Cincinnati Enquirer v. Ronan*, 124 Ohio St.3d 17, 2009-Ohio-5947, 918 N.E.2d 515, ¶ 10, Dr. Mahajan is still not entitled to fees or damages because he did not comply with R.C. 149.43(C)(1), and his public-records claims were mostly without merit. Therefore, Dr. Mahajan's supplemental evidence does not justify a different result. We deny the board's motion for leave to file supplemental evidence instanter and motion for leave to submit evidence under seal and Dr. Mahajan's request for leave to depose the board's general counsel, which are rendered moot by our disposition.

{¶ 65} We also deny Mahajan's request for oral argument because the parties' briefs are sufficient to resolve this public-records mandamus case. *Toledo Blade*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 35, fn. 2.

### III. Conclusion

{¶ 66} "The Public Records Act serves a laudable purpose by ensuring that governmental functions are not conducted behind a shroud of secrecy. However, even in a society where an open government is considered essential to maintaining a properly functioning democracy, not every iota of information is subject to public scrutiny. Certain safeguards are necessary." *Wallace*, 89 Ohio St.3d at 438, 732 N.E.2d 960. The General Assembly has provided these safeguards by balancing competing concerns and providing for certain exemptions from the release of public records pursuant to R.C. 149.43. See *State ex rel. WBNS TV, Inc. v. Dues*, 101 Ohio St.3d 406, 2004-Ohio-1497, 805 N.E.2d 1116, ¶ 36. The state medical board has met its burden for establishing the applicability of several of these exemptions. The board acted diligently and appropriately in the vast majority of its redactions to the requested records.

{¶ 67} Other redactions were not covered by an exemption. Therefore, we grant a writ of mandamus to compel respondent to provide access to an unredacted copy of the May 17, 2007 e-mail, the portions of the May 22, 2007 notes that refer to Mahajan's name and the fact that he had been previously deposed by Katko, and the parts of the May 31, 2007 memorandum and June 2007 e-mails that note Mahajan's name. In all other respects, we deny the writ. We also deny relator's request for statutory damages, attorney fees, and oral argument.

Writ granted in part

and denied in part.

BROWN, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Subashi & Wildermuth, Nicholas E. Subashi, and Halli J. Brownfield; and the Chandra Law Firm, L.L.C., and Subodh Chandra, for relator.

Richard Cordray, Attorney General, and Katherine J. Bockbrader, Assistant Attorney General, for respondent.

_____